[Nos. A141625, A142154. First Dist., Div. One. Aug. 18, 2016.]

EAST BAY REGIONAL PARK DISTRICT, Plaintiff and Respondent, v.
GEOFFREY M. GRIFFIN, as Trustee, etc., Defendant;
SIDNEY CORRIE, JR., et al., Objectors and Appellants.

[No. A143688. First Dist., Div. One. Aug. 18, 2016.]

SIDNEY CORRIE, JR., et al., Plaintiffs and Appellants, v.
GEOFFREY M. GRIFFIN, as Trustee, etc., Defendant;
EAST BAY REGIONAL PARK DISTRICT, Objector and Respondent.

## COUNSEL

Gagen, McCoy, McMahon, Koss, Markowitz & Raines, Gregory L. McCoy and Lauren E. Dodge for Plaintiffs and Appellants.

Wendel, Rosen, Black & Dean, David Goldman and Thiele R. Dunaway for Defendant and Respondent.

## OPINION

**MARGULIES, J.**—These consolidated appeals arise out of a dispute concerning the trust of Armand Borel. The trust states that, upon Borel's death, a parcel of the trust's real property is to be distributed to the East Bay Regional Park District (the District) for the purposes of establishing an agricultural park. A portion of that same property is also the subject of an option agreement between Borel and Sidney Corrie, Jr.

After Borel's death, Corrie filed a petition for an order instructing the trustee to convey a portion of the property to him pursuant to the option agreement. The District opposed that petition, and also filed a competing petition pursuant to Probate Code[1] section 17200. The District's section 17200 petition sought an order authorizing the trustee to distribute the property to the District and to receive an $800,000 loan on behalf of the trust. The probate court granted the District's petition, and Corrie appealed.[2] The District subsequently petitioned the probate court pursuant to section 1310, subdivision (b) to authorize the immediate distribution of the land and acceptance of the loan notwithstanding the pending appeal. The order granting that motion is also on appeal. While the first two appeals were pending,

[1] All statutory references are to the Probate Code unless otherwise specified.

[2] Lynette Arbios Cleland and Peter Arbios, Borel's heirs, also opposed the District's petition and joined in Corrie's appeal. We refer to Corrie, Cleland, and Arbios collectively as appellants.

the probate court held a trial on the validity of Corrie's option rights and issued a statement of decision finding Corrie's option was unenforceable. Judgment was entered in favor of the District, and a third and final appeal followed.

We find appellants are not entitled to relief in connection with their first two appeals, because under section 1310, subdivision (b), the actions taken by the trustee are valid, regardless of the outcome on appeal. Accordingly, those appeals are dismissed. As to the third appeal, we affirm, as we agree with the probate court that the option agreement is void and unenforceable.

## I.  BACKGROUND

A.  *The Trust*

Armand Borel was the settlor and trustee of the Armand Borel Trust dated June 20, 1994. The trust's estate consists of various real and personal property, including a 16.65-acre parcel of real property located in Danville (the Danville property).

Borel executed a revised trust instrument on July 14, 2008 (the Trust). During his lifetime, Borel was to act as the trustee and could distribute proceeds from the Trust to himself. On Borel's death, the Trust was to become irrevocable, Noelle Flanagan was to be appointed as the successor trustee, and various distributions were to be made. Specifically, the successor trustee was to distribute $300,000 to Dana Vasquez, give all of Borel's firearms and ammunition to Carl J. Mast, and pay the estate's death taxes, debts, and expenses.

As to the remaining trust estate, the successor trustee was to distribute the Danville property to the District "for so long as it [is] used as and for an agricultural park." The distribution of the Danville property was further conditioned on the District doing or performing all of the following: "all structures of whatever kind or nature are to remain on the property, and be maintained, and if necessary, restored"; various equipment, including several vintage automobiles, shall be "held, maintained, and exhibited as the beneficiary may desire"; Borel's residence shall be restored and "used as a museum and meeting facility"; and various personal property within the residence shall be restored, including various antique furniture, four deer heads, two ducks, an albino blackbird, and a restored gas pump.

The Trust also states: "If in the trustee[']s sole opinion, which shall be final and incontestable, the [District] cannot meet each and every of the above-described conditions then" the Danville property shall instead be distributed

to the City of San Ramon, first, or to the Town of Danville, second, subject to the same terms and conditions. If none of these beneficiaries take the Danville property, the trustee may lease any or all of the property to them under such terms and conditions the trustee deems appropriate. If the remaining trust property is not completely disposed of by the preceding provisions, it shall be distributed to Borel's heirs.

The Trust also includes a no contest clause, which provides in relevant part: "If any beneficiary under this instrument . . . directly or indirectly contests this instrument, any amendment to this instrument, . . . or the validity of any contract, agreement . . . , declaration of trust, beneficiary designation, or other document executed by the settlor or executed by another for the benefit of the settlor that is part of the settlor's integrated estate plan . . . then the right of that person to take any interest given to him or her by this instrument . . . shall be void, and any gift or other interest in the trust property to which the beneficiary would otherwise have been entitled shall pass as if he or she had predeceased the settlor without issue."

## B.  *The Option Agreement*

On June 14, 2004, Borel and Corrie entered into a "Real Property Option and Purchase Agreement" (the Option Agreement) pertaining to the Danville property. The Option Agreement granted Corrie a five-year exclusive and irrevocable option to purchase up to seven acres of the Danville property at a price of $500,000 per acre. In return for the purchase option, Corrie was required to pay Borel a nonrefundable option fee of $100,000 up front, plus another $5,000 per month during the option period. The Option Agreement also gave Corrie a right of first refusal to purchase "the balance of the [Danville property] that is not part of this Option Agreement."

On March 25, 2009, Borel and Corrie amended the Option Agreement to (1) extend the option period by one year to June 14, 2010; (2) increase the option fees from $5,000 per month to $10,000 per month; and (3) give Corrie the option to extend the option period to June 14, 2011, by payment of an additional $100,000 to Borel, which would count toward the purchase price of the property if Corrie exercised the option (Amendment No. 1). Corrie timely made the $100,000 payment required for extension of the option period until June 14, 2011.

Borel died on April 19, 2009, and Flanagan became the successor trustee of the Trust. On November 16, 2010, Flanagan and Corrie executed a document captioned "Amendment #2 to Real Property Option and Purchase Agreement" (Amendment No. 2). Amendment No. 2 extended the option period to June 14, 2013, in return for Corrie making "advance principal

payments" totaling $500,000 over the succeeding five months, as well as continuing to pay monthly option fees, not applicable to the purchase price, at the higher rate of $14,286 per month, instead of $10,000 per month, until the option was exercised. Amendment No. 2 also gave Corrie an option to purchase "an additional adjacent three acres" at $500,000 per acre, "thus bringing the total property subject to an option to purchase to ten acres." Further, Amendment No. 2 stated the parties acknowledged their obligations were conditioned upon the approval and filing of a final subdivision map or parcel map.

## C.   District's Petition to Remove Trustee

In April 2011, Vasquez and the District filed separate petitions to remove Flanagan as the successor trustee. The court subsequently ordered Flanagan to produce various financial records. According to the District, these records showed Flanagan used significant Trust funds for improper purposes. Among other things, the District asserted Flanagan attempted to frustrate Borel's plan for creating an agricultural park on the Danville property and entered into Amendment No. 2 to the Option Agreement to obtain funds for her own personal use.

In connection with the petition, the District filed with the probate court a "Preliminary Concept Plan," dated October 24, 2011, which detailed how the District planned to establish an agricultural park on the Danville property in conformance with the terms and conditions of the Trust. The concept plan states that, given the bequests, liens, and encumbrances on the estate property, it is likely up to 10 acres of the Danville property would be sold, generating up to $5 million, of which about $3 million would be used to establish the agricultural park.

On December 8, 2011, before the petition could be adjudicated, Flanagan died. Elizabeth Soloway was appointed as the second successor trustee. Soloway later filed her accounting and report of Trust administration with the court, indicating Flanagan used Trust funds to pay herself $232,219.64. Soloway's accounting also identified an additional $163,633.77 in "miscellaneous expenses" that were not Trust expenses.

## D.   Corrie's Motion to Instruct and Prior Appeal

On November 22, 2011, Corrie filed a motion for an order instructing the trustee to convey to him the seven acres of the Danville property subject to the Option Agreement. The motion was made on the ground Corrie had contracted to sell his option rights to a third party and that buyer's due diligence inspection of the property and determination to close must take place prior to December 31, 2011.

Soloway filed an objection to Corrie's petition and requested a separate trial on the issue of whether the Option Agreement was void for failing to condition sale of the property on compliance with the Subdivision Map Act (Gov. Code, § 66410 et seq.). The probate court decided to proceed on that basis and set a trial on "the bifurcated issue of the defense of illegality." Following briefing and argument, the probate court ruled the Option Agreement was void and unenforceable at its inception due to noncompliance with the Subdivision Map Act, and subsequent acts by the parties were ineffective to revive its validity.

Corrie appealed and we reversed and remanded in an opinion dated May 16, 2013. We concluded Amendment No. 2 cured the illegality of the original option agreement. (*Corrie v. Soloway* (2013) 216 Cal.App.4th 436, 449 [156 Cal.Rptr.3d 709].) The District and Soloway had argued Amendment No. 2 constituted a breach of trust that would deprive the District of its bequest. (*Corrie*, at pp. 445–446.) We rejected the argument based on a lack evidence in the record, stating our decision was "[w]ithout prejudice to the District's position in any further proceedings on this point." (*Id.* at p. 446.)

## E. *District's Section 17200 Petition*

The subject of the first appeal now before us is the District's petition for the probate court to instruct the trustee, pursuant to section 17200. The original petition was filed on September 10, 2013, and a new petition was filed on December 3, 2013. Among other things, the new petition sought an order instructing and authorizing the trustee to receive a loan of up to $800,000 from the District.

The District alleged an order authorizing the loan was necessary because the Trust was nearly insolvent due to Flanagan's malfeasance. According to the District, the Trust lacked sufficient funds to service its debts, pay its estate and property taxes, and cover its operational costs. The District had previously loaned the Trust $700,000 in July 2012, and $99,958.90 in July 2013 for various expenses. The July 2012 loan was secured by a third deed of trust against the Danville property, while the July 2013 loan was unsecured. The District, in October 2013, also purchased a $1.4 million loan to the Trust from Savvy Real Estate Capital (the Savvy loan). The Savvy loan was secured by the Danville property and had gone into default.

In addition to demanding an order authorizing the loan, the District sought to modify the Trust pursuant to the doctrine of *cy près*. Specifically, the District stated it wished to receive the Danville property "without conditions to utilize the entire [parcel]," explaining "the park as described in the Trust is no longer feasible given the changed circumstances during the Trust administration." Further, the District requested an order instructing the Trustee to

distribute an unrestricted and unconditional grant deed to the Danville property. The District represented such a grant deed was necessary for the Trust to take a charitable deduction on its estate tax return.

The Attorney General, who is tasked with regulating charitable trusts, filed a response to the District's section 17200 petition, stating the petition did not appear to establish the need to modify the Trust through cy près. The Attorney General asserted that, although the petition did not track the specific conditions contained in the Trust, it did indicate an intention to establish an agricultural park. The Attorney General concluded that if the court was inclined to grant the petition, the specific restrictions in the Trust regarding the use of the property should be included in the court's order.

On April 17, 2014, after a contested hearing on the matter, the probate court issued an order granting the petition (the section 17200 order). The court found it need not decide the applicability of the cy près doctrine, as the stated intent of the District did not depart from Borel's wishes. The trustee was instructed to receive an $800,000 loan from the District, $300,000 of which was to be held in trust for the bequest to Vasquez. The court also instructed the trustee to distribute the Danville property to the District by unrestricted and unconditional grant deed. Appellants timely appealed the section 17200 order.

## F.  District's Section 1310, Subdivision (b) Petition

The appeal of the section 17200 order stayed the order's enforcement. The District filed a petition pursuant to section 1310, subdivision (b) to lift the stay. Section 1310, subdivision (b) allows a probate court to "direct the exercise of the powers of the fiduciary" for the purpose of "preventing injury or loss to a person or property" while an appeal is pending. The District requested the court direct the trustee to perform the acts previously ordered in the section 17200 order. Absent such an order, the District argued, there was a risk the Trust would default on its existing secured loans and place the Danville property in imminent risk of foreclosure.

On May 20, 2014, after considering the evidence and holding a contested hearing, the probate court issued an order granting the motion (the section 1310(b) order). The court found the Trust was insolvent; due to the insolvency, the beneficiaries and claimants of the trust would suffer harm unless additional revenue was obtained; and the only source currently proposed for such revenue was from the District. The court also found appellants were subject to no risk of harm if the loan was authorized, as the District's ownership interest in the Danville property was subject to Corrie's option rights, to the extent they were enforceable. On the other hand, appellants,

Trust beneficiaries and claimants, and the District would be subject to imminent risk of harm if the proposed loan was not authorized. The court found that, without the loan, the Trust could not maintain insurance on the property; the property could not be safely maintained; an IRS tax lien of over $3.5 million would continue to accrue interest and penalties; there was a risk of foreclosure due to past due loan balances; and the Trust would be unable to take advantage of a negotiated reduction in legal fees that was contingent upon timely payment.

Appellants timely appealed the section 1310(b) order.

### G.   Trial on Validity of Corrie's Option Rights

The final appeal in this matter arises out of the trial on the validity of Corrie's option rights, which commenced on June 4, 2014. In their pretrial briefing, appellants asserted the trial should be vacated because "there [wa]s no matter pending with respect to the June 4 trial date." The probate court rejected appellants' arguments in a June 4, 2014 order. The court explained there were at least two petitions that may serve as the basis for the pending trial: (1) Corrie's November 22, 2011 petition for instructions, which was the subject of our prior opinion in Corrie v. Soloway, supra, 216 Cal.App.4th 436; and (2) Corrie's "Petition for Instructions to Trustee re Right of First Refusal, filed on January 30, 2014." The probate court also rejected Corrie's claim that the first petition became moot, and found Corrie's attempt to withdraw the petition was precluded by Code of Civil Procedure section 581.

The trial proceeded as scheduled. On September 23, 2014, after an 11-day trial, the probate court issued a detailed 37-page statement of decision. The court once again rejected appellants' jurisdictional arguments, as well as their argument the District lacked standing to object to the Option Agreement. The court also rejected appellants' contention the District had violated the Trust's no contest clause, finding the clause did not encompass the Option Agreement, and in any event, the agreement did not constitute a protected instrument within the meaning of the Probate Code.

Turning to the substance of the dispute, the probate court found the original Option Agreement and Amendment No. 1 had expired, and Amendment No. 2 was void and unenforceable since Flanagan acted without authority in entering into it. The court explained: "[O]ne of Borel's clear purposes . . . was to create an agricultural park, after certain specified distributions of personal property were made. By purporting to convey rights in the [Danville property] to Corrie in Amendment #2 on November 16, 2010, more than [1.5] years after Borel's death, Flanagan acted in excess of her express authority. She did so in a manner inconsistent with the purpose of

the trust and in violation of her fiduciary duties owed to the beneficiaries." The court also found that, "in disregard of the interests of the beneficiaries, Corrie and Flanagan negotiated Amendment #2 for their own personal purposes and gain." (Fn. omitted.)

The court entered judgment in favor of the trustee and the District and against appellants on October 17, 2014, and appellants timely appealed.

## II.  DISCUSSION

A.  *Section 17200 Order and Section 1310(b) Order*

■ The probate court's section 17200 order directed the trustee to distribute the Danville property to the District via unconditional grant deed. It also directed the trustee to receive an $800,000 loan from the District, which was to be secured by a deed of trust. This order was stayed by appellants' appeal, but that stay was effectively lifted when the court issued the section 1310(b) order, and once again authorized the trustee to accept the loan and deed the property. Because actions taken by the trustee pursuant to section 1310, subdivision (b) are valid, irrespective of the outcome of an appeal, there is no relief we can provide appellants in connection with their appeals of both the section 1310(b) order and the section 17200 order.

■ "Probate Code section 1310, subdivision (a), provides that, subject to listed exceptions, an appeal stays the operation of an order." (*Conservatorship of McElroy* (2002) 104 Cal.App.4th 536, 555 [128 Cal.Rptr.2d 485].) Section 1310, subdivision (b) provides for an exception to the automatic appellate stay, permitting the probate court's discretionary retention of jurisdiction in limited circumstances, notwithstanding the pendency of an appeal: "Notwithstanding that an appeal is taken from the judgment or order, for the purpose of preventing injury or loss to a person or property, the trial court may direct the exercise of the powers of the fiduciary, or may appoint a temporary guardian or conservator of the person or estate, or both, or a special administrator or temporary trustee, to exercise the powers, from time to time, as if no appeal were pending. *All acts of the fiduciary pursuant to the directions of the court made under this subdivision are valid, irrespective of the result of the appeal.* An appeal of the directions made by the court under this subdivision shall not stay these directions." (§ 1310, subd. (b), italics added.)

The last sentence of section 1310, subdivision (b) appears to contemplate appeals from orders made pursuant to the statute. However, the second to last sentence—which states the acts of the fiduciary taken pursuant to section 1310, subdivision (b) are valid, regardless of the outcome of appeal—

indicates the relief that may be sought through such appeals is limited. Thus, an appellate court may not reverse an order made pursuant to section 1310, subdivision (b) to the extent doing so would disturb acts of the trustee taken pursuant to statute. Moreover, where a section 1310, subdivision (b) order grants relief identical to that of the underlying order on appeal, the statute effectively deprives an appellant of his or her right to appeal altogether.

We recognize depriving a litigant of his or her right to appeal is an extraordinary measure. But the Legislature appears to have determined that, in certain cases, expeditious resolution of disputes is more important than allowing for a right of review.[3] Our Supreme Court reached the same conclusion in *Gold v. Superior Court* (1970) 3 Cal.3d 275, 281 [90 Cal.Rptr. 161, 475 P.2d 193] (*Gold*), in which it considered a statute virtually identical to section 1310, subdivision (b) that applied to guardianship and conservatorship proceedings. That statute stated the trial court had jurisdiction to direct the exercise of the powers of the conservator notwithstanding a pending appeal, but only for the purpose of preventing injury or loss to person or property. (*Gold*, at p. 281.) Like section 1310, subdivision (b), the statute also stated the acts of the conservator shall be valid, irrespective of the results of an appeal. (*Gold*, at p. 281.) The court held the statutory exception to the stay should be narrowly construed: "By specifically conditioning the application of the statute upon the prevention of injury or loss to person or property the Legislature has determined that the exception should be operative only in a limited class of cases. . . . [T]he language of this statute strongly suggests that the exception applies only to the exceptional case involving a risk of imminent injury or loss." (*Ibid.*)

The Supreme Court explained such a construction was necessary because orders issued pursuant to the statute may not be subject to appellate review: "Where . . . the trial court's order directs the very act which constitutes the subject matter of the appeal, *the exception operates to effectively deprive the appellant of his appeal.* By validating the conservator's acts 'irrespective of the result of the appeal' and notwithstanding the fact that the appellant ultimately prevails, the Legislature has created an extraordinary procedure. In essence, the Legislature appears to have determined that in some cases the need for speedy disposition of certain matters outweighs the interest in affording the affected parties a right of review." (*Gold, supra,* 3 Cal.3d at p. 282, italics added; see *Kane v. Superior Court* (1995) 37 Cal.App.4th 1577, 1584–1586 [44 Cal.Rptr.2d 578] [citing *Gold* and adopting the same interpretation of a substantially similar statute].)

More recently, the Second Appellate District addressed the appealability of section 1310, subdivision (b) orders in *Sterling v. Sterling* (2015) 242

---

[3] The legislative history of section 1310 appears to be silent on this issue.

Cal.App.4th 185 [194 Cal.Rptr.3d 867]. That case involved a dispute between Rochelle and Donald Sterling, the settlors and cotrustees of a trust which owned the Los Angeles Clippers basketball team. (*Id.* at p. 188.) After Donald made several racist remarks and the National Basketball Association sought to terminate the Sterlings' ownership of the Clippers, Rochelle filed a section 1310, subdivision (b) petition seeking a court order to confirm the sale of the team for $2 billion. (*Sterling,* at pp. 190, 192.) The probate court granted the petition over Donald's objections. (*Id.* at pp. 192–193.) On appeal, Donald requested the court reverse the probate court's orders and direct the sale of the Clippers be undone. (*Id.* at p. 195.) The court held Donald failed to show he was entitled to such relief since acts taken pursuant to section 1310, subdivision (b) are valid regardless of the outcome on appeal. (*Sterling,* at p. 195.) The court concluded: "[E]ven if Donald is successful, the sale of the Clippers cannot be 'undone' and Donald seeks no other relief and demonstrates no other prejudice." (*Ibid.*) The court found this issue was dispositive, but nevertheless went on to discuss Donald's other arguments, including his contention there was no imminent risk of injury or loss that justified authorizing the sale under section 1310, subdivision (b). (*Sterling,* at pp. 195, 198–200.)

Likewise, in the instant action, appellants are essentially arguing we should reverse the probate court's section 1310(b) order and undo the District's $800,000 loan to the Trust, as well as the grant deed of the Danville property to the District. This we cannot do. The trustee accepted the loan and deeded the property pursuant to the section 1310(b) order, and thus the trustee's acts are valid irrespective of the outcome on appeal. And even if the probate court erred, there is no relief we can provide to appellants in connection with their appeal of the section 1310(b) order. Nor is there any relief we can provide appellants in connection with their appeal of the section 17200 order, as that order granted identical relief. Put another way, we cannot reverse the section 17200 order without also invalidating the acts of the trustee taken pursuant to section 1310, subdivision (b), which would be a direct violation of the statute. As this issue is dispositive, we need not and do not consider appellants' contentions that the section 1310(b) order was unwarranted because there was not an extraordinary risk of harm or loss. We also need not and do not consider appellants' contentions that the section 17200 order is inconsistent with the terms of the Trust and the probate court could not modify the Trust's terms through the doctrine of *cy près.*

In response to our request for supplemental briefing, appellants conceded the actions taken by the trustee pursuant to the section 1310(b) order remain valid notwithstanding the outcome of the appeal. They also appear to concede the trustee's actions in accepting the $800,000 loan cannot be undone, stating they no longer seek to " 'roll back' " the loan. Notwithstanding these concessions, appellants maintain the $800,000 loan authorized by the probate

court is too large. They assert $300,000 of the loan that was to be held in trust for beneficiary Vasquez should be returned immediately because Vasquez is now deceased. However, as appellants concede, Vasquez's death is not reflected in the record. Accordingly, we cannot base our decision on that fact. Appellants appear to contend an additional portion of the loan should also be paid back immediately because it is unnecessary to avoid imminent harm. But it is entirely unclear from the record how much of the loan the Trust has already spent, and the Trust cannot pay down the loan with money it does not have.

Appellants assert there are other significant problems with the probate court's section 1310(b) and section 17200 orders which can be addressed on appeal without invalidating the trustee's actions. Specifically, they assert we should address the aspects of the court's orders authorizing the trustee to distribute the Danville property to the District via unconditional grant deed. Their arguments on this point are not the model of clarity. They assert that while section 1310, subdivision (b) validates the trustee's actions, the statute does not "have any impact on the actions of a non-trustee [(the District)]." They further contend the District's section 17200 and 1310, subdivision (b) petitions amounted to an attack on the Trust and an attempt to frustrate the intent of Borel, thereby triggering the Trust's no contest provisions, and resulting in the District's forfeiture of its gift under the Trust.

Setting aside that the District's actions did not trigger the no contest clause (see pt. II.B., *post* [unpub.]), appellants' arguments are unavailing. At bottom, appellants are essentially asserting it was improper for the trustee to convey the Danville property to the District, and the property should be returned to the Trust. Even if they are correct that the probate court erred, pursuant to section 1310, subdivision (b), we cannot now invalidate the actions of the trustee or otherwise undo the transaction. Appellants attempt to get around section 1310, subdivision (b) by shifting the focus from the actions of the trustee to those of the District, asserting the District's actions ran afoul of the no contest clause. But regardless of whether the District violated the no contest clause, we cannot reverse the probate court's orders without also invalidating the trustee's actions in transferring the property. Since a reversal cannot be squared with section 1310, subdivision (b), the appeals of the section 1310(b) and section 17200 orders necessarily fail.[4]

---

[4] Though we need not reach the issue, we question appellants' assertion the District could not take the Danville property because it had no intention of creating the agricultural park envisioned by Borel. Contrary to appellants' contentions, the Trust appears to express a general charitable intent. And since Flanagan's actions as successor trustee rendered the Trust insolvent, a modification of the Trust's terms was warranted to carry out Borel's intent.

In sum, we find there is no relief we can grant appellants in connection with their appeals from the section 17200 order and the section 1310(b) order. Accordingly, those appeals are dismissed.

B.   *Corrie's Option**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## III.   DISPOSITION

The appeals from the section 17200 order (case No. A141625) and the section 1310(b) order (case No. A142154) are dismissed, as there is no relief we can grant appellants in connection with those appeals. As to the appeal from the judgment on the validity of the option (case No. A143688), we affirm. Costs are awarded to the District.

Humes, P. J., and Dondero, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 26, 2016, S237407.

---

*See footnote, *ante*, page 734.